# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN FLYNN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ARCHITECTURAL SOUTHWEST STONE COMPANY, LLC, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. <br> ) 06-0488 (RMU) <br> ) <br> ) <br> ) <br> ) |

**DECLARATION OF DAVID F. STUPAR IN SUPPORT OF
PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**

Pursuant to 28 U.S.C. § 1746, I, **DAVID F. STUPAR**, hereby declare as follows:

1. I am the Executive Director of the Bricklayers & Trowel Trades International Pension Fund ("IPF" or "Fund") and am also an authorized representative to effect collections on behalf of the International Union of Bricklayers and Allied Craftworkers International Masonry Institute ("IMI") as specified in the Collection Procedures of the Central Collection Unit ("CCU") of the Bricklayers and Allied Craftworkers ("Collection Procedures" or "Procedures") (attached hereto as Exhibit 1). I have personal knowledge of the facts stated herein and, if called to testify as a witness, I could and would competently testify as set forth below.

2. The IPF is a multiemployer employee benefit plan subject to ERISA. The IPF is governed by an equal number of employer-appointed and union-appointed Trustees, pursuant to the Taft-Hartley Act. Benefits under the plan are funded by contributions from participating employers.

3. The Fund provides pension and other benefits to employees who work in the construction industry under contracts negotiated between Bricklayer local unions and employers.

Pursuant to these contracts, the employers are obligated to make contributions to the Fund in order to fund the benefits provided to the beneficiaries. The Trustees of the Fund have a fiduciary duty under ERISA to collect delinquent employer contributions, and the Trustees can be held personally liable for their failure to do so. 29 U.S.C. §§ 1104, 1109, 1132(g)(2). The Fund is administered in the District of Columbia.

4. The Trustees adopted the CCU Collection Procedures governing the collection of employer contributions and reports. (See attached.)

5. Under these Procedures, contributions and reports are due on or before the 15th day of the month ("Due Date") following the month in which work is performed. Once contributions are delinquent, the Procedures authorize the assessment of interest at 15 percent per annum and an additional amount, the greater of 15 percent per annum or 20 percent of the delinquent contributions, in the form of liquidated damages.

6. I am personally familiar with the account of Architectural Southwest Stone Company, LLC. ("Architectural" or "Defendant").

7. Architectural, acting through its authorized agent or officer, executed a collective bargaining agreement with the International Union of Bricklayers and Allied Craftworkers Local 32 Michigan ("Local 32 MI") ("Agreement"), which obligated Architectural to submit monthly reports and payments to the IPF and IMI on behalf of its covered employees pursuant to the foregoing Procedures.

8. Architectural has performed work in Local 32 MI covered by the Agreement.

9. An examination ("Audit") of Architectural's books and records by the independent accounting firm of TIC International Corporation, covering the time period October 2002 through December 2004, revealed that Defendant failed to properly submit required monthly reports and contributions pursuant to the Agreement. In addition, although Defendant submitted reports to the IPF for work performed pursuant to the Agreement in Local 32 MI

2

during the months of June and July 2004, Defendant failed to submit related contributions. Accordingly, the IPF conducted its own Recap of amounts due the Fund by Architectural, based on the monthly reports submitted by Defendant for the months of June and July 2004.[1]

10. As determined by the audit, Architectural failed to pay the IPF and IMI $7,840.47 in contributions due for work performed in Local 32 MI pursuant to the Agreement during the months of October 2002 through December 2004. As provided for in ERISA Section 502(g)(2)(A), Architectural owed the IPF and IMI contributions in the total amount of $7,840.47 for work performed in Local 32 MI during this time period. As provided for in ERISA Section 502(g)(2)(B) and under the terms of the Collection Procedures, interest in the amount of $553.25, calculated at a rate of 15 percent per annum on such delinquent contributions is owed by Architectural. Moreover, pursuant to ERISA Section 502(g)(2)(C)(ii) and the Collection Procedures, liquidated damages in the amount of $1,568.09 calculated at 20 percent of the contributions owed have been assessed on such delinquent contributions due.

11. As determined by the IPF Recap, Architectural failed to pay the IPF and IMI $1,183.43 in contributions due for work performed in Local 32 MI pursuant to the Agreement during the months of June and July 2004. As provided for in ERISA Section 502(g)(2)(A), Architectural owes the IPF and IMI contributions in the total amount of $1,183.43 for work performed in Local 32 MI during this time period. As provided for in ERISA Section 502(g)(2)(B) and under the terms of the Collection Procedures, interest in the amount of $243.04, calculated from the Due Date at a rate of 15 percent per annum on such delinquent contributions is owed by Architectural. Moreover, pursuant to ERISA Section 502(g)(2)(C)(i) and the Collection Procedures, an additional computation of interest in the amount of $243.04

---

[1] Although the time periods covered by the audit and the IPF Recap overlap somewhat, there is no duplication in the delinquent moneys claimed because the audit covers moneys neither reported nor paid to the IPF by Defendant, while the Recap covers hours reported to the IPF, but not paid.

3

calculated at the rate of fifteen percent per annum of the contributions owed has been assessed on such delinquent contributions due.

12. As of the date of this Declaration, despite due demand thereof, Defendant has failed to fully pay moneys due the IPF and IMI as outlined above.

13. As provided for in ERISA Section 502(g)(2)(A) and the Collection Procedures, Defendant has failed to pay a total of $9,023.90 in contributions due the IPF and IMI.

14. As provided for in ERISA Section 502(g)(2)(B) and the Collection Procedures, Defendant is obligated to pay the IPF and the IMI $796.29 in interest on such unpaid contributions, calculated from the Due Date at the rate of 15 percent per annum.

15. As additionally provided for in ERISA Section 502(g)(2)(C) and the Collection Procedures, Defendant is obligated to pay the IPF and IMI $1,811.13 in liquidated damages at the rate of 20 percent, and/or an additional computation of interest at the rate of 15 percent per annum.

16. Fees in the amount of $250.00 for filing the Complaint are recoverable under ERISA Section 502(g)(2)(D) and the terms of the Collection Procedures.

17. Audit fees of $470.47, which are recoverable under ERISA Section 502(g)(2)(D) and the terms of the Collection Procedures.

18. Attorney's fees of $12,140.65, which are recoverable under ERISA Section 502(g)(2)(D) and the terms of the Collection Procedures, have been incurred by the Plaintiffs in their attempt to collect delinquent contributions, interest, liquidated damages and/or an additional computation of interest due from Defendant. A detailed accounting of the attorney's fees incurred in this action is presented in the Declaration of counsel to the IPF which accompanies this motion for default judgment.

liquidated damages and/or an additional computation of interest owed the IPF and IMI; and attorney's fees is $24,492.44.

20. To date, Defendant has paid $6,000 of the total of $24,492.44 due as outlined above.

21. Therefore, the total balance due Plaintiffs by Defendant as of this date is $18,492.44.

I declare under penalty of perjury that the foregoing is true and correct.

Date: 8\26\08

_____
David F. Stupar
Executive Director

**EXHIBIT 1**

Case 1:06-cv-00488-RMU    Document 7-2    Filed 08/30/2006    Page 7 of 12

GENERAL COLLECTION PROCEDURES OF
THE CENTRAL COLLECTION UNIT OF
THE BRICKLAYERS AND ALLIED CRAFTWORKERS

These General Collection Procedures govern the collection of delinquencies by the Central Collection Unit of the Bricklayers and Allied Craftworkers ("CCU") on behalf of the following participating entities: Bricklayers and Allied Craftworkers International Union ("BAC"); Bricklayers and Trowel Trades International Pension Fund ("IPF"); Bricklayers and Allied Craftworkers International Health Fund ("IHF"); International Masonry Institute ("IMI"); Bricklayers and Allied Craftworkers Political Action Committee ("BACPAC"); and Local Officers and Employees Pension Fund ("LOEPF") (collectively "CCU Entities"). IHF and BAC SAVE are covered by Special Collection Procedures. Such Special Collection Procedures shall control when in conflict with these General Procedures.

I.   REPORTS AND PAYMENTS TO CCU ENTITIES

   A.   Due Date

      1.   Contributions and reports to the CCU Entities are due on or before the 15th day of the month following the month for which the contributions are being paid ("Due Date"), unless the collective bargaining agreement imposes a different Due Date.

      2.   Reports of participating employers must be filed each month even if no contributions are due for that month. All participating employers, whether submitting contributions directly or through a local administrator or local union, must use the standard CCU report form.

      3.   Employer reports will be date-stamped on the day received in the CCU Office, or in the case of local administrators or local unions, on the day received by the local. The stamped date will be the controlling date with regard to these Collection Procedures.

      4.   If any controlling date under these Collection Procedures falls on a weekend or legal holiday, the applicable date will be the next working day.

5. The IPF is authorized by other CCU Entities to act on their behalf in litigation. All references to "CCU Office" in these Collection Procedures may also refer to "IPF Office," as applicable.

B. Notice Of Delinquency

1. If the CCU Office has not received payment by the last day of the month of the Due Date, the CCU Office will send a Reminder Notice to the employer. If payment has not been received 30 days after the Reminder Notice, a Notice of Delinquency will be sent to the employer.

2. The Notice of Delinquency will advise the employer that required contributions were not received by the Due Date and warn that if the contributions are not received within 15 days (60 days following the Due Date), the employer will be considered delinquent ("Delinquent Date") and will be assessed interest at 15% per annum (retroactive to the Due Date) and may be required to pay Liquidated Damages of 20% of the delinquent amount. The Notice of Delinquency will require the employer to notify the CCU Office within five (5) days of the date of notice if the employer believes that the Notice of Delinquency was sent in error.

C. Notice Of Referral To Counsel

1. If the CCU Office has not received payment within 15 days of the Notice of Delinquency, the CCU Office will send to the employer a Notice of Referral to Counsel.

2. The Notice of Referral to Counsel will advise the employer that payments were not received by the Delinquent Date and that payments for contributions and interest are due and owing. Unless all sums owed are received by the CCU Office within 10 days following the Notice of Referral to Counsel, liquidated damages up to 20% of the delinquent contributions or statutory interest may be imposed and the matter automatically will be referred to counsel. The Notice of Referral to Counsel also will state that counsel will be instructed to seek all sums recoverable, including contributions, interest, liquidated damages or statutory interest, and all attorneys' fees.

1449336 v1; V2BC01!.DOC

II.     COUNSEL

    A.     Procedures

        1.     If CCU has not received the contributions and applicable interest within 10 days of the Notice of Referral to Counsel, the matter automatically will be referred to counsel no later than 15 days from the due date.

        2.     Within 10 days of referral, counsel will send a letter to the employer advising that if payment of contributions, interest and other damages is not received within 10 days, suit will be instituted.

        3.     Suit thereafter will be instituted.

    B.     CCU Policy Following Referral To Counsel

        1.     Following the referral of a matter to counsel, the CCU Office will have no authority to deal with an employer except to discuss computations.

        2.     Counsel shall file suit for all moneys recoverable, including damages that may be recoverable under Section 502(g)(2) of ERISA and also may seek remedies under applicable state law against individual corporate officers and/or shareholders.

        3.     The CCU is authorized to seek legal redress prior to the time that the above procedures are exhausted if, in his sole discretion, the Director concludes that the interests of affected participants require immediate action. If an employer fails to make payment when due, suit may be filed to collect all delinquent contributions, interest and other damages regardless of other exhaustion requirements in these Collection Procedures.

III.    AUDITS

Audits will be conducted to insure full compliance with employer obligations under collective bargaining agreements. Every employer can expect to be audited at some time. If a delinquency is discovered as the result of an audit, the employer will be assessed the cost of the audit.

A.  Detection Of Delinquent Employers Subject To Audit

   1.  At least once every year, the Executive Directors of the IPF and IHF will send information to participants reflecting contributions received from participating employers. The participants will be encouraged to report missing hours to the CCU.

   2.  The CCU will take steps to insure that delinquencies of participating employers are recovered.

B.  Audits Performed By Third Parties

   1.  The CCU will rely upon audits performed by third parties when CCU determines that they conform to auditing procedures contained in the CCU's Guidelines.

   2.  The CCU periodically will monitor the audits of third parties in order to confirm their reliability.

C.  Audits Performed On Employers Contributing Directly To The CCU

   1.  The CCU will coordinate with third parties who perform audits on employers contributing directly to CCU and will insure that such audits conform to CCU guidelines.

   2.  As to employers contributing directly to the CCU who are not subject to audits by third parties, CCU will perform two types of payroll audits on directly contributing employers in order to insure compliance.

      a.  Random Audits -- Audits may be conducted on any participating employer at any time, on a random basis, at the direction of the Director.

      b.  Problem Audits -- When the Director receives information from a local union, covered member or other source indicating that an employer may be delinquent, the Director may order that an audit be conducted.

D.  Notification Of Audit Delinquency

   1.  The CCU Office will send a Notice of Delinquency to audited employers found to be delinquent stating the amount of additional contributions owing as a result of the audit.

   2.  Any unsatisfied audit deficiency will be treated according to the CCU's Collection Procedures following the intervention of counsel.

      E.    Form of Audits

          1.    All audits will be carried out under procedures formulated by the Director.

          2.    All employer books and records set forth in the audit procedures will be made available to the CCU auditor.

IV.    BONDS

The Director may, in his sole discretion, require an employer to post a cash or surety bond in an amount and under terms necessary to protect the interests of the applicable CCU Entity.

5